[Medina Circuit Court, January Term, 1886.]
Upson, Baldwin and Haynes, JJ.

### *JOHN NYE v. THE STATE OF OHIO.

ACT OF A GENERAL NATURE.

The act passed by the general assembly of the state of Ohio, April 12, 1876 (Vol. 73 O. L., p. 321), entitled "an act to prevent gambling and the sale of intoxicating liquors at a place therein named," is in violation of article II., section 26 of the constitution of the state, and is void.

BALDWIN, J.

In this case John Nye was indicted and convicted at the September term, 1885, of the court of common pleas of Medina county, of unlawfully selling intoxicating liquors in August, 1885, within two miles of Chippewa Lake in said county, said John Nye not being a physician.

The act under which he was convicted, was passed April 12, 1876, and is found in 73 Ohio Laws, page 321.

It reads as follows:

"Section 1. Be it enacted by the general assembly of the state of Ohio, that it shall be unlawful for any person to set up, exhibit, keep, or use for gambling purposes, any gambling or gaming table, machine, device or appliance whatever, or to sell or otherwise dispose of any intoxicating liquor on or within a distance of two miles of Chippewa Lake, in the county of Medina; provided that nothing herein shall be construed to interfere with physicians in their regular practice.

"Section 2. Any person offending against any of the provisions of the preceding section shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in any sum not less than ten, nor more than one hundred dollars, or be imprisoned in the county jail not less than five nor more than thirty days, or both at the discretion of the court, and the place wherein the offense was committed may on the conviction of the owner or keeper thereof, be shut up and abated as a nuisance by order of the court."

It is claimed that this act is a violation of the 26th section of article II, of the constitution, providing that, "all laws of a general nature shall have a uniform operation throughout the state."

In the case of Cass v. Dillon, 2 O. S., 617, it is said, "The origin of this statute is perfectly well known. The legislature had often made it a crime to do in one county or even township, what it was perfectly lawful to do elsewhere, and had provided that acts, even for the punishment of offences, should be enforced or not in certain localities as the electors thereof respectively might decree. It was to remedy this evil, and prevent its recurrence, that this section was framed."

So, in Lehman v. McBride, 15 O. S., 605: "Under the former constitution laws having a general subject-matter, and therefore of a general nature, were frequently limited expressly in their operation to one or more counties to the exclusion of other portions of the state. As a consequence, on the same subject, there might be one law for Hamilton county, another for Franklin county, and still a third for Ashtabula county. This naturally led to improvident legislation, enacted by the votes of legislators who were indifferent in the premises because their own immediate constituents were not to be affected by it. To arrest and for the future prevent this evil, the provision in question was inserted in the present constitution."

This clause has been the subject of frequent debate and decision, and the differences of opinion have been great.

It is here said on one side, that the phrase "laws of a general nature" means where the subject and circumstances provided for are such as to be of general

---

*Motion for leave to file a petition in error to the circuit court, was overruled by the Supreme Court, December 6, 1887, on the authority of State v. Josephs, 43 O. S., 457.

interest. It is said on the other, that it means only those laws which, in fact, by their terms, do apply to the whole state, and that there have been judicial intimations to this effect.

If the last is the construction of the constitution, it means nothing, and is no limitation at all on the legislative power.

The constitution is the fundamental and most important law of the state, and should above all laws receive a fair and reasonable interpretation. It must mean that, where the subject-matter is general, and the circumstances are similar, the same law should be provided by the legislature. Else the constitution travels in a circle.

In State v. Powers, 38 O. S., 62, it is said that, "Two propositions at least involved in its construction may be said to have been settled :

"1. That the *general form* of a statute is not the criterion by which its *general nature* is determined.

"2. That whether a law be of a *general nature* or not, depends on the character of its subject-matter."

It is further provided in the constitution, that "no license to traffic in intoxicating liquors shall hereafter be granted in this state, but the general assembly may by law provide against the evils resulting therefrom."

It was said in State v. Powers, that other provisions of the constitution recognized the subject of schools as of a general nature, and the foregoing provision would seem to be a similar recognition on the part of the framers of the constitution.

That the regulation or prohibition of the sale of liquors is a subject of a general nature, appears from the history of legislation.

From very shortly after the formation of the state, there have been constantly upon the statute books of the state laws upon the subject.

In most other states such legislation appears. Parties have divided upon it, and the discussion of such questions has attracted the most lively attention of all political parties in the state. In our opinion, good sense and law unite in declaring the matter a subject of a general nature.

The case of Falk, *ex parte*, 42 O. S., 638, has been discussed by each side. Revised Statutes, section 1924, punishing any person found in a city of the first grade of the first class, or within four miles of it, with burglars' tools in his possession, was said to be a law of a general nature, but local in form and operation, and therefore void.

It was said by the court that that section was confessedly and indeed palpably local, but it is not so palpably local as the act in question here.

It is claimed by defendant in error, that that decision was based on the ground that the crime provided against is *malum in se*, while it is said the act here furnished is not.

But the fact that the act was *malum in se*, was relied upon merely to show that a law about it must of necessity be of a general nature, of a subject-matter of general interest.

But it is said by the state's attorney that the Supreme Court in Burckholter v. Village of McConnellsville, 20 O. S., 308, sustained a prohibition in a single municipal corporation. But it is to be noted that that ordinance was passed by the village under an act of the assembly, which applied to all cities and incorporated villages, and that the constitutional limitation is upon the assembly.

This act of the assembly was similar in principle to the act of March 29, 1882, authorizing incorporated villages having within their limits a college or university, to provide against the evils resulting from a sale of intoxicating liquors therein, which was decided in Bronson v. Oberlin, 41 O. S , 476, to be a law of a general nature, and not repugnant to the constitution. The court say :

"In the case of the State v. Parsons *et al.*, 40 N. J. Law, 123, the principle is well stated, as follows : 'A law framed in general terms, restricted to no locality, and operating equally upon all of a group of objects, which, having regard to the

purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves, is not a special law, but a general law.'"

In the case already discussed, of Falk, *ex parte*, 42 O. St., 644, Judge Okey, delivering the opinion of the court, says: "A statute, general in form, prohibiting the sale of liquors in the immediate vicinity of any college, would perhaps be regarded as a general and therefore valid enactment in force throughout the state, although every county does not contain a college. And this is consistent with everything I have stated."

The same principle is recognized in the McConnellsville case, where Judge Scott, delivering the unanimous opinion of the court, and discussing with great brevity the constitutional question, says: "It is no ground of objection to the validity of prohibitory ordinances thus authorized, that the general laws of the state do not extend the prohibition to all parts of the state. Morality and good order, the public convenience and welfare, may require many regulations in crowded cities and towns, which the more sparsely settled portions of the country would find unnecessary." Compare 41 O. S., 401. Judge Okey in the case of McGill v. The State, 34 O. S., 228, said: "Under the power to organize cities and villages (Const. article XIII., section 6), the general assembly is authorized to classify municipal corporations, and an act relating to any such class may be one of a general nature." Judge McIlvaine in the case of The State v. Powers, 38 O. S., 54, said that, "the judicious classification, and discrimination between classes, will not destroy the uniformity required by the constitution."

It is very evident that the law we are discussing in this case does not come within these rules, and for the reasons before given, we are of the opinion that it is unconstitutional and void.

E. L. Hessenmueller and F. L. Gallup, for plaintiff in error.

J. Andrew, and Boynton & Hale, for defendant in error.